EX PARTE T. W. TIPTON.

*No. 2793. Decided February 15.*

**Constitutional Law—Construction of Statutes.**—The rule has been heretofore laid down, and is now re-asserted, that "where an act has been passed by the Legislature, signed by the proper officers of each house, approved by the Governor, and filed in the office of the Secretary of State, it constitutes a record which is conclusive evidence of the passage of the act as enrolled. Neither the journals kept by the Legislature, nor the bill as originally introduced, nor amendments attached to it, nor parol evidence can be received to show that an act of the Legislature, properly enrolled, authenticated, and deposited with the Secretary of State, did not become a law. This court for the purpose of informing itself of the existence or terms of a law can not look beyond the enrolled act certified to by those officers who are charged by the Constitution with the duty of certifying, and with the duty of declaring what laws have been enacted." Under this rule this court, to inquire into the status of the Act of April 5, 1889, providing for the inspection of oils, etc., can not go behind the authenticated statute itself. But note the opinion to the effect that, in any event, the contention in this case arising upon the conflicting recitals of the journals of the Senate and those of the House of Representatives, said journals being of equal weight and credit, the journals of the House, which sustains the act as promulgated, being supported by corroborative evidence, would be held to prevail.

HABEAS CORPUS on original application to the Court of Appeals from Smith County.

The opinion states the case.

*Finlay, Marsh & Butler* and *McLemore & Campbell*, for the relator.— Our position is that the Texas "Inspection Law" is invalid by reason of the erroneous enrollment of the proviso at the end of section 3 of the act. And in support of this position we quote from and comment upon the following authorities:

Jones v. Hutchinson, 43 Ala., 721: "We regard it as being now well settled that courts can, and, if necessary, will look behind a printed statute to the legislative records to ascertain whether it has a legal existence." In said case it appears that the Senate bill was amended in the House by the addition of the proviso. The Senate refused to concur in the amendment, whereupon the Senate was notified by the House committee that the House had receded from its amendment, and the bill was thus engrossed—that is to say, without the amending proviso. In making the enrolled bill the said proviso was copied into it as a part thereof, and this erroneously enrolled bill was signed by the Speaker of the House and the President of the Senate and approved by the Governor. *Held:* That the bill which was signed and approved was not the bill which had been passed by the two houses, and that the bill which had passed the two houses had never been signed or approved; and, therefore, the act in question did not have the force or validity of law.

Moody v. State, 48 Ala., 115: In this case it appears that the House

bill was amended in the Senate and passed; the amendments were concurred in and the bill as amended was passed by the House. In preparing the enrolled bill the said amendments were omitted and the bill was thus signed and approved. *Held:* That such facts being established by the journals of the two houses, the said bill never acquired the force of law, but was "wholly void and imposes no legal obligation on anybody. Said act being void, it follows that the indictment under which the defendant was convicted is also void, and the sentence and judgment of the court on the same are erroneous and must be reversed and the defendant discharged."

Moog v. Randolph, 77 Ala., 597: In this case the House Journal showed that the enrolling clerk omitted to incorporate in the enrolled bill a material amendment, which was a component part of the complete bill as it passed these two legislative bodies, and the bill in this shape was signed and approved. *Held:* That such omission vitiates the entire bill. The court says: "The bill passed by the General Assembly is not the one approved by the Governor, and the one approved by the Governor is, *e converso,* not the one passed by the General Assembly."

Sayre v. Pollard, 77 Ala., 608: This decision is to the same effect as that announced in the preceding case. See also Stein v. Leeper, 78 Alabama, 517, to the same effect.

Spangler v. Jacoby, 14 Ill., 297: This is a leading case and an acknowledged authority upon the proposition. The opinion says: "The printed statute book is evidence of the acts contained therein. It is not, however, conclusive, but may be corrected by the original acts on file in the Secretary's office. It is competent to go behind a printed statute and show from the enrolled law that it is erroneously published. The journals of either branch of the Legislature are the proper evidence of the action of that branch upon all matters before it. In our opinion it is clearly competent to show from the journals of either branch of the Legislature that a particular act was not passed in the mode prescribed by the Constitution, and thus defeat its operation altogether. * * * And when a contest arises as to whether the act was thus passed the journal may be appealed to to settle it. It is the evidence of the action of the House, and by it the act must stand or fall. It certainly was not the intention of the framers of the Constitution that the signatures of the speakers and executive should furnish conclusive evidence of the passage of a law."

Brown v. Mayor, 86 Tenn., 732: "The journals will be considered in determining the validity of an act of the Legislature."

Attorney-General v. Rice, 64 Mich, 385: "If the Constitution has not been complied with in the passage of an act, that fact must be shown by the printed journals."

People ex rel. v. McElroy, 40 N. W. Rep., 750 (Mich. Sup. Court, 1888): After reviewing the cases holding a contrary doctrine, the court says: "I

am of the opinion that the right of the courts to look into the journals for certain purposes should be sustained, rather than to hold that the enrollment and authentication of the act, as enrolled by the proper officers, is conclusive.    The court certainly ought to have the right to open the journals of the Legislature to ascertain whether the fraud or mistake of some clerk or employe of the Legislature or its committees has not imposed upon the statute books a different law from the one actually passed by the Legislature."

State v. McClelland, 18 Neb., 236 (1885):  In this case an act was passed by both branches of the Legislature creating the office of register of deeds in counties having not less than 15,000 inhabitants.    The bill was then enrolled, certified, and approved.    In the enrolled bill the number of inhabitants stated is 1500.    The court says that it is thus seen that the bill as passed "was never presented to or approved by the Governor, while the bill actually approved was not passed by either house."    *Held:*  That the act was of no force and effect.    The opinion says:  "The journals of each house were evidently intended to furnish the public and the courts with the means of ascertaining what was actually done in each branch of the Legislature, and they are to be treated as authentic records of the proceedings, and the court may resort to them when the validity of an act is questioned upon the ground of the failure of the Legislature to observe a matter of substance in its passage, for the purpose of ascertaining whether the constitutional provisions have been substantially complied with or not. The certificate of the presiding officers is merely *prima facie* evidence that an act has been duly passed, and will be overthrown if it appears from the journals that it was not."

Opinions of the Justices, 35 N. H., 579:  The bill as enrolled, signed, and approved contained a clause which it was claimed was not in the bill when passed.    The journals showed that said clause had been added by the Senate as an amendment after the bill had passed the House, but failed to show that the House had concurred in the amendment.    *Held:*  That said act "is not, nor is any part of it, legally valid and binding as a law and statute."

Opinions of the Justices, 52 N. H., 622:  This was a similar case, and the opinion affirms the previous decision.    The court says that the enrolled bill is *prima facie* evidence that the act was formally passed and approved, but that the journals of either house may be resorted to for the purpose of showing the contrary, and that when thus shown the act will be held invalid and of no effect as a law.

Berry v. Railroad, 41 Md., 446:  "We think the court is bound to look not only behind the printed statute book, but beyond the forms of authentication of the bill as recorded.  *  *  *  And, applying this rule to the present case, we can have no doubt whatever that the third section of the act in question, as that act was sealed and approved by the Governor, is

materially different from the third section of the act as it passed the two houses of the Legislature. We must therefore declare that particular section of the act to be null and void." See Legg v. Mayor, 42 Maryland, to the same effect and approving this decision.

State ex rel. v. City of Hastings, 24 Minn., 78: "An enrolled bill properly authenticated is presumed to have been passed in accordance with the requirements of the Constitution. This presumption, however, is not conclusive, but may be overthrown by reference to the legislative journals."

In re Venderberg, 28 Kans., 243: "The enrolled bill is very strong presumptive evidence of the regularity of the passage of the act of the legislative power of a State, and it is conclusive evidence of such regularity and validity unless the journals of the Legislature show clearly, conclusively, and beyond all doubt that the act was not passed regularly and legally."

Worthen v. Badgett, 32 Ark., 515: "Although when an act appears in a statute book purporting to have been approved by the Governor and published by authority of law the presumption is that it was regularly passed, yet it is well settled that courts can, and if necessary will, look behind the printed statute to the legislative records to ascertain whether it was in fact passed in accordance with the forms and in the manner prescribed by the Constitution; and such has been the practice of this court." See to same effect Smither v. Garth, 33 Ark., 17; and Chicot County v. Davis, 40 Ark., 200.

Brady, District Attorney, v. West, 50 Miss., 17: In this case the correctness of the enrolled bill was challenged, and the Senate journal showed that its amendment was not contained in the enrolled bill. *Held:* That the enrollment was not conclusive evidence of the verity of the bill, and that resort to the journals for the detection of error was rightfully had. Cites and approves Jones v. Hutchinson, 43 Ala., *supra.*

The State v. Brown, 20 Fla., 407: It was contended that the bill was amended in the Senate; that the amendment was concurred in by the House, but that the enrolled bill did not contain the amendment. The court says: "If the journals show conclusively that any material portion of a bill as passed was omitted in the enrolling, so that it may be considered that the act as approved was not passed by the Legislature, and does not express the legislative will, the act as approved—at least to the extent that it is affected by the omission—must be held invalid. This is a rule now well settled by the American courts."

In Texas the subject has been discussed in the following cases: Railroad v. Hearne, 32 Texas, 547; Blessington v. Galveston, 42 Texas, 642; Railroad v. Adum, 53 Texas, 343; The Day Land and Cattle Co. v. The State, 68 Texas, 526.

So far as concerns the Court of Appeals, the question appears to be conclusively settled in our favor by the decision in Hunt v. The State,

22 Texas Ct. App., 396, which is an elaborate and exhaustive opinion.

The proposition that the validity of an act may be presented and determined by *habeas corpus* is also decided in our favor in case of Ex Parte Asher, 23 Texas Ct. App., 662.

For further citation of authorities on this subject, see Cooley's Const. Lim., p. 163, note 2, and cases cited; 51 Am. Dec., 616, and note; 85 Am. Dec., 356, and note; 26 Am. Law Reg., 304, and note.

*W. L. Davidson,* Assistant Attorney-General, for the State, citing Blessing v. The City of Galveston, 42 Texas, 641; Usener v. The State, 8 Texas Ct. App., 177; Baldwin v. The State, 21 Texas Ct. App., 592; Hunt v. The State, 22 Texas Ct. App., 403.

WILLSON, JUDGE.—Applicant T. W. Tipton being in custody of the sheriff of Smith County by virtue of a capias issued from the County Court of said county, upon an information based upon a complaint charging said applicant with unlawfully selling refined kerosene illuminating fluid without first having the same inspected and branded according to law, applied to the county judge of said Smith County for the writ of *habeas corpus,* and said judge declined to grant said writ; but as the question involved in the case was the validity of a statute, referred the application to this court, requesting action thereon.   At Tyler this court granted the writ, and upon a hearing thereof took the cause under advisement and transferred the same to this branch, and after a thorough investigation of the question presented we now declare our conclusions.

It is claimed by applicant that the statute for a violation of which he is being prosecuted and is in custody as aforesaid, to-wit, the act approved April 5, 1889, entitled "An Act to provide for the inspection of refined oils which are the product of petroleum, and which may be used for illuminating purposes within this State, and to regulate the sale and use thereof, and to provide penalties for violation of the same," is not a valid law because it is not the statute which was in fact enacted by the Legislature.

It is claimed by applicant, and is conceded by the Assistant Attorney-General, and is shown by the journals of the Senate and House of Representatives, that said act originated in the House of Representatives, and was designated and known as House Bill No. 167.   It passed the House and was sent to the Senate.   In the Senate, section 3 of the bill was amended, and the bill was returned to the House with the Senate amendment thereto.   The House concurred in the Senate amendment; the bill as amended was enrolled; the Committee on Enrolled Bills reported to the House that the bill had been correctly enrolled, and the bill was then signed and presented to the Governor, who approved it, and it was deposited in the Secretary of State's office.

As appears from the Senate journals the amendment to section 3 of said bill which was adopted by the Senate was as follows: "Provided, it shall not be necessary to inspect oil which has been inspected under a law of another State, and its quality determined and evidenced by the authentic stamp or mark of the inspector of such State." In the enrolled bill, which is now the statute we are considering, the proviso in section 3 corresponding to the amendment above quoted reads: "Provided, it shall not be necessary to inspect one which has been inspected under a law of another State." It is manifest that the proviso in the statute and the proviso which is recited in the Senate journals are not the same, but are essentially different.

But how far will the courts of this State go in inquiring into the acts of the legislative department of the government? When a bill has been authenticated by the signatures of the President of the Senate, and the Speaker of the House of Representatives, and the Governor of the State, and has been deposited in the office of the Secretary of State, and published as a law of the State, will the courts of this State, from the journals of the Legislature or other evidence, determine that the statute is not a valid law because not enacted in accordance with the formalities required by the Constitution, or because the statute so authenticated is not the one enacted by the Legislature?

In several of the American States it is the established doctrine that the courts will inquire behind the authenticated statute into the manner of its enactment, and will from the journals determine whether or not it is a valid law. Counsel for applicant have referred us to numerous decisions which so hold, and which unquestionably support the propositions contended for in behalf of applicant. But there is much conflict of authority upon the questions above propounded. We shall not take the time to cite and review the vast number of decisions bearing upon the subject, believing, as we do, that the courts of this State have announced the rules by which we should be governed.

In Blessing v. The City of Galveston, 42 Texas, 641, it is held that the judicial department, on the bare fact that the journals of one or both houses of the Legislature fail to show the passage of the bill in full and strict conformity to all the directions contained in the Constitution, should not disregard and treat as naught an act in all other respects unobjectionable. It is further clearly intimated, we think, in that decision that the authenticated statute should be regarded as the best, if not conclusive, evidence that the required formalities were observed in its passage, and that for the courts to exercise the power of going behind such statute and inquiring into the manner of its enactment would lead to most disastrous consequences.

In Railway Company v. Hearne, 32 Texas, 547, it is held that the best

evidence of the terms of an act of the Legislature is a duly certified copy of the enrolled bill.

In The Day Company v. The State, 68 Texas, 526, it is held that it will be conclusively presumed that a bill had been referred to a committee and reported on before its passage as required by the Constitution.

In Usener v. The State, 8 Texas Court of Appeals, 177, this court quotes approvingly from The State v. Swift, 10 Nevada, 176, as follows: "Where an act has been passed by the Legislature, signed by the proper officers of each house, approved by the Governor, and filed in the office of the Secretary of State, it constitutes a record which is conclusive evidence of the passage of the act as enrolled. Neither the journals kept by the Legislature, nor the bill as originally introduced, nor the amendments attached to it, nor parol evidence, can be received in order to show that an act of the Legislature, properly enrolled, authenticated, and deposited with the Secretary of State, did not become a law. This court, for the purpose of informing itself of the existence or terms of a law, can not look beyond the enrolled act, certified to by those officers who are charged by the Constitution with the duty of certifying and with the duty of deciding what laws have been enacted."

In Hunt v. The State, 22 Texas Court of Appeals, 396, this court held that where the Constitution expressly requires that the journals shall show a particular fact or action of the Legislature in the enactment of a statute, as that the bill was signed by the presiding officer of each house, such fact or action must affirmatively appear in the journals or the statute will be invalid. But where there is no express constitutional requirement that the journals shall show affirmatively that a constitutional requirement has been observed, it will be conclusively presumed that such requirement was observed, and the journals nor any other evidence will in such case be allowed to impeach the validity of the statute.

We conclude, therefore, that we are not at liberty to go behind the authenticated statute in this instance. Upon its face it is a valid law, and it is not claimed that the journals fail to show any fact expressly required to be shown in order to make it valid. It must be conclusively presumed that the statute as authenticated and deposited in the Secretary of State's office is precisely the same as was enacted by the Legislature.

But were we at liberty to go behind the statute and consult the journals we would be confronted with conflicting evidence as to the amendment. The Senate journals show that an amendment to section 3 was adopted in that house, and shows what that amendment was, and that the bill and amendment were returned to the House of Representatives. The journals of the House of Representatives show that the amendment adopted by the Senate was concurred in, but does not set forth the amendment. The journals of the House further show that the bill as

amended by the Senate was correctly enrolled, and this enrolled bill is the statute authenticated and published as a law, but it does not contain the amendment as set forth in the Senate journals. Which of the journals, those of the Senate or of the House, are correct? They are of equal credit. It may be that the amendment was incorrectly copied into the Senate journals, and that the amendment in fact adopted by the Senate and concurred in by the House is that which appears in the enrolled bill. If, then, we were to look to the journals to determine the question we should hold that the weight of evidence supports the validity of the statute, because the journals of the two houses being of equal credit and weight the authentication of the bill as enrolled by the presiding officers of the two houses and by the executive corroborates and confirms the correctness of the House journals as to the amendment in fact adopted.

It is ordered that the applicant be remanded to the custody of the sheriff of Smith County, and that he pay the costs of this proceeding.

*Ordered accordingly.*

Hurt, J., absent.