## NARREGANG v. BROWN COUNTY *et al.*

1. The journals of the two houses of the legislature are not competent to impeach the validity of a statute enrolled and authenticated by the proper officers.

2. Comp. Laws, § 5081, provides that, when an exception is to the sufficiency of the evidence to support the verdict, the objection must specify the particulars in which it is insufficient; and section 5090 declares that when a motion is made on the minutes of the court, based on the insufficiency of the evidence, the notice of intention must spec-

ify the particulars in which it is insufficient. *Held,* that an assignment of error based on the insufficiency of the evidence which does not specify the particulars in which the evidence is insufficient will not be reviewed.

3.   Where appellant did not discuss or refer in his brief to errors of law specified in his assignments, such errors will be presumed to have been waived.

(Opinion filed April 2, 1901.)

Appeal from circuit court, Brown county, HON. A. W. CAMPBELL, Judge.

Action by Spencer W. Narregang against Brown county and John A. Fylpaa, as county treasurer, and another. From a judgment in favor of defendants, and from an order denying a new trial, plaintiff appeals. Affirmed.

The facts are stated in the opinion.

*S. H. Cranmer,* for appellant.

Where the validity of a law is challenged it is the duty of the court to determine the question by an inspection of the journals of the legislature. Callaghan v. Chipman, 26 N. Y. 806; Brewer v. Mayor, 9 S. W. 166; People v. McElroy, 40 N. W. 750; Rode v. Phelps, 45 N. W. 493; Currie v. S. P. Co.,26 Pac. 884; Rumsey v. N. Y. & N. E. Co., 30 N. Y. 88. Constitutional requirements as to a vote on the "final passage" of a bill apply to amendments concurred in after the bill has passed both houses, by the house in which the bill was originally passed." Norman v. Kentucky B'd. of Mgrs., 556, 18 L. R. A. 20 S. W. 901. Courts will go behind the certificates of the presiding officer and the approval of the governor, and inspect the legislative journals and ascertain whether a statute was actually enacted. Rode v. Phelps, 45 N. W. 493; State v. McClelland, 25 N. W. 77; State v. Poole, 29 N. W. 246; Union Bank v. Comrs. of Oxford, 34 L. R. A. 487, 25 S. E. 966. The

journals overcome the enrolled bills. State v. Hooker, 18 So. 767. The journals are the only evidence that may be considered in determining the validity of the enactment of a statute. Ames v. U. P. Ry., 64 Fed. 165; Smith v. C & N. W. Ry., 64 Fed. 165; Robertson v. People, 38 Pac. 326.

*John H. Perry,* for respondent.

The statute book in which the law appears is presumptive evidence of such law, and we take the position that the law cannot be attacked, except in an action brought for that purpose. Burt v. Winona & St. Peter Ry. Co., 18 N. W. 285; Comstock v. Tracy 46 Fed. 162.

As to how far courts will go into legislative proceedings to determine whether a law has been illegally or legally enacted the courts of the several states are somewhat at variance. In some states courts have gone so far as to look into the journals, but the great weight of authority is they will not go beyond the certificates of the presiding officers and the governor. The leading cases are: Sherman v. Story, 30 Cal. 254; Laferty v. Huffman, 35 S. W. 123; Field v. Clark, U. S. supreme court, 12 Sup. Rep. 495; State v. Jones, 34 Pac. 201; Territory v. O'Conner, 5 Dak. 397.

CORSON, J. This action was brought to quiet title to certain lots in the city of Aberdeen, and to certain quarter sections of land in Brown county, claimed by the plaintiff. The defendants in their answer admitted that the plaintiff was the owner of the property described in the complaint, and that the defendant Brown county claimed an interest in or lien upon said property, and averred the same had been assessed for taxes for the years 1892 to 1897, inclusive, and that, said taxes not being paid, the property was sold, as provided by law, to satisfy the taxes levied thereon, and that the

property was bid in by said Brown county, and that it holds the tax certificates issued thereon. The court found in favor of the lien of · the defendants to all the property described in the complaint, excepting two quarter sections, and from the judgment entered in said action the plaintiff appeals.

The first contention on the part of the appellant is that the act constituting Chapter 14 of the Laws of 1891, entitled "An Act Prescribing the Mode of Making Assessments and the Levy and Collection of Taxes and for Other purposes Relative Thereto," approved March 9, 1891, is unconstitutional and void, for the reason that certain mandatory provisions of the state constitution relating to the passage of bills by the legislature were not complied with, as shown by the entries in the journals of the two houses of the legislature. It is insisted on the part of the respondents that the act of the legislature, as enrolled and certified to by the respective officers and approved by the governor, is conclusive upon the courts, and that it is not competent for the courts to consider any matter found in the journals tending to impeach the validity of the act. As will be seen, the question is a very important one, affecting as it does the proceedings for the collection of taxes in this state for a number of years, and affecting titles to property acquired through tax deeds under the act. It is also important, affecting, as it may, all acts passed by the legislature. We shall not now stop to inquire whether the journals of the two houses, if given full credence, afford sufficient evidence that the provisions of the constitution were not complied with, but confine ourselves to the question of whether or not the entries found in the journals can in any case be received by the court to impeach the enrolled bills as certified to by the presiding officers of the two houses and approved by the governor, or which have become laws without the governor's approval, under the provisions of the constitution.

There are two lines of decisions upon this question; the first holding, with the appellant, that a court may always go behind the enrolled bill and examine the journals of the two houses, and, if it finds that the mandatory provisions of the constitution have not been complied with, it may declare the law unconstitutional and void. The second class of decisions hold that the enrolled bill, certified to by the presiding officers, approved by the governor, and filed with the secretary of state, is conclusive upon the courts, and that it is not competent for them to go behind such record, or allow it to be impeached by entries in the journals. We are of the opinion that public policy, the better reasoning of the decisions, and the great weight of authority support the respondent's contention. The authorities sustaining the appellant's view take the position that, as the proceedings provided by the constitution for the passage of bills are mandatory, it is the duty of the court, when any bill is claimed to have been passed in violation of any of the mandatory provisions of the constitution, to examine the journals of the two houses, and, if it finds evidence therein that such is the fact, to declare such act null and void. In this view, it will be seen the court virtually ignores the authentication of the bill by the presiding officers, and substitutes in its place the memoranda of the clerks found in the journals, transscribed perhaps months or years after the legislature which passed the act has adjourned. Courts that take this view seem to overlook the fact that the presiding officers of the two houses act under the solemnity of their oaths in certifying to the bills passed, and that the members of the two houses and the members of the various committees, also are acting under the solemnity of an oath to support the constitution of the state, and that the provisions of the constitution providing the various steps that shall be taken in the passage of a bill are addressed mainly to the legislature. Such a rule requires that

all persons shall be presumed to know the law, not only as it is pre-
served in the public records of the state, but as it may be changed,
modified, or annulled by the clerks' memoranda in the journals of the
two houses; and neither lawyer nor layman can be said to know
what law is in force unless he is familiar with the journals of the
two houses and the legal effect of the journal entries. The courts
taking the respondents' view hold that when an act of the legislature
is duly authenticated by the presiding officers of the two houses, ap-
proved by the governor, and filed with the secretary of state, it
should be held, like a judgment of a court of general jurisdiction,
conclusive, and not subject to impeachment by any matter con-
tained in the journals; that, while the courts may declare unconsti-
tutional and void a law which upon its face conflicts with the consti-
tution, it would be against public policy and an invasion of the rights
of one of the co-ordinate branches of government to permit the law
as contained in the enrolled bill to be questioned in the courts. This
question, in the quite recent case of Field v. Clark, 143 U. S. 649,
12 Sup. Ct. 495, 36 L. Ed. 294, decided by the supreme court of the
United States, was given very full consideration. It seems from the
opinion in that case that the question had never before been directly
decided by that court. It was there held: "When a duly enrolled
bill, signed by the speaker of the house of representatives, the presi-
dent of the senate, and the president of the United States, is placed in
the custody of the secretary of state, its authentication as a law of
the United States is complete; and no reference can be had to the jour-
nal of either house, to the reports of committees, or to any other doc-
uments printed by authority of congress, for the purpose of showing
that a section of the bill as it finally passed does not appear in the
act as thus authenticated." In the course of the opinion the court
says: "The signing by the speaker of the house of representatives,

and by the president of the senate, in open session, of an enrolled bill, is an official attestation by the two houses of such bill as one that has passed congress. It is a declaration by the two houses, through their presiding officers, to the president, that a bill thus attested has received, in due form, the sanction of the legislative branch of the government, and that it is delivered to him in obedience to the constitutional requirement that all bills which pass congress shall be presented to him. And when a bill thus attested receives his approval, and is deposited in the public archives, its authentication as a bill that has passed congress should be deemed complete and unimpeachable. * * * The evils that may result from the recognition of the principle that an enrolled act in the custody of the secretary of state, attested by the signatures of the presiding officers of the two houses of congress and the approval of the president, is conclusive evidence that it was passed by congress, according to the forms of the constitution, would be far less than those that would certainly result from a rule making the validity of congressional enactments depend upon the manner in which the journals of the respective houses are kept by the subordinate officers charged with the duty of keeping them." In Pangborn v. Young, 32 N. J. Law, 29, the supreme court of New Jersey had this question under consideration, and in the course of the opinion Chief Justice BEASLEY says: "Can anyone deny that, if the laws of the state are to be tested by a comparison with these journals, so imperfect, so unauthenticated, that the stability of all written law will be shaken to its very foundation? Certainly no person can venture to say that many of our statutes, perhaps some of the oldest and most important, those which affect large classes of persons or on which great interests depend, will not be found defective, even in constitutional particulars, if judged by this criterion. * * * In addition to these considerations, in

judging of consequences we are to remember the danger, under the prevalence of such a doctrine, to be apprehended from the intentional corruption of evidences of this character. It is scarcely too much to say that the legal existence of almost every legislative act would be at the mercy of all persons having access to these journals; for it is obvious that any law can be invalidated by the interpolation of a few lines, or the obliteration of one name and the substitution of another in its stead. I cannot consent to expose the state legislature to the hazards of such probable error or facile fraud. The doctrine contended for on the part of the defense has no foundation, in my estimation, on any considerations of public policy." In Sherman v. Story, 30 Cal. 253, the supreme court of California, speaking through Mr. Justice SAWYER, says: "Better, far better, that a provision should occasionally find its way into the statute through mistake, or even fraud, than that every act, state and national, should at any and all times be liable to be put in issue and impeached by the journals, loose papers of the legislature, and parol evidence. Such a state of uncertainty in the statute laws of the land would lead to mischiefs absolutely intolerable." This doctrine was followed in People v. Burt, 43 Cal. 560. The supreme court of Indiana, in Evans v. Browne, 30 Ind. 514, uses the following language: "But it is argued that, if the authenticated roll is conclusive upon the courts, then less than a quorum of each house may, by the aid of corrupt presiding officers, impose laws upon the state in defiance of the inhibition of the constitution. It must be admitted that the consequence stated would be possible. Public authority and political power must, of necessity, be confided to officers, who, being human, may violate the trusts imposed in them. This, perhaps, cannot be avoided absolutely. * * * The framers of our government have not constituted it [the judiciary] with faculties to supervise co-ordinate departments,

and correct or prevent abuses of their authority. It cannot authenticate a statute. That power does not belong to it. Nor can it keep the legislative journals. It ascertains the statute law by looking at its authentication, and then its function is merely to expound and administer. It cannot, we think, look beyond that authentication, because of the constitution itself. If it may, then for the same reason it may go beyond the journal when that is impeached; and so the validity of legislation may be made to depend upon the memory of witnesses, and no man can in fact know the law which he is bound to obey. Such consequences would be a large price to pay for immunity from the possible abuse of authority by the high officers, who are, as we think, charged with the duty of certifying to the public the fact that a statute has been enacted by competent houses. Human governments must repose confidence in officers. It may be abused, and there may be no remedy. Nor is there any great force in the argument, which seems to be regarded as of weight by some American courts, that some important provisions of the constitution would be a dead letter if inquiry may not be made by the courts beyond the rolls. This argument overlooks the fact that legislators are sworn to support the constitution, or else it assumes that they will willfully violate that oath. It is neither modest nor just for judges thus to impeach the integrity of another department of government, and to claim that the judiciary only will be faithful to its obligation." This view is sustained by the following authorities: State v. Jones, 6 Wash. 452,34 Pac. 201, 23 L. R. A. 340; *Ex parte Wren* 63 Miss, 512; Weeks v. Smith, 81 Me. 538, 18 Atl. 325; Brodnax v. Groom, 64 N. C. 244; State v. Swift, 10 Nev. 176; Railroad Co. v. Governor, 23 Mo. 353; People v. Devlin, 33 N. Y. 269; *Ex parte* Tipton, 28 Tex. App. 438, 13 S. W. 610, 8 L. R. A. 326; Edger v. Board, 70 Ind. 331; Lottery Co. v. Richoux, 23 La. Ann.743; Kil-

gore v. Magee, 85 Pa. 401. The leading court which sustains the position of the appellant is the supreme court of Illinois; but in People v. Starne, 35 Ill. 121, that court, in speaking of their decision, says: "We are not, however, prepared to say that a different rule might not have subserved the public interest equally well, leaving the legislature and the executive to guard the public interest in this regard, or to become responsible for its neglect." This expression of doubt as to the rule laid down in that state is quite important, when a rule for the first time is to be established in this state. Our conclusion is, therefore, that the circuit court was concluded by the properly authenticated enrolled bill on file in the office of the secretary of state, of which the printed laws are *prima facie* evidence, and that chapter 14 of the Laws of 1891, therefore is a valid statute, and not subject to be impeached by the entries in the journals of the two houses.

The appellant further contends that, if the law of 1891 is a valid and subsisting law, the tax proceedings are void under that law, for the following reasons: (1) There was no sufficient description of the property assessed; (2) there was no equalization of the assessment; (3) there was no valid levy of taxes; (4) there was no valid tax sale. It is contended on the part of the respondents that neither of these questions can be considered by this court, for the reason that the case was tried by the circuit court without a jury, and there are no exceptions to its findings of fact, and no specifications in the bill of exceptions of the particulars in which said findings are not supported by the evidence. This contention of the respondents seems to be well founded. In the specifications annexed to the bill of exceptions the only errors attempted to be pointed out are errors of law alleged to have occurred at the trial in the admission or rejection of evidence, with one exception. There were forty-two as-

signments of error, the last of which is as follows: "The court erred in rendering judgment herein in favor of the defendant Brown county, for the reason that the evidence is insufficient to support the findings and judgment herein." It will be observed that the appellant makes no specification of the particulars in which the evidence is insufficient. The appellant moved for a new trial, and the only grounds specified in the motion are irregularity in the proceedings of the court, accident and surprise, newly-discovered evidence, insufficiency of the evidence to justify the findings, that such findings are against law, and errors of law occurring at the trial and excepted to by the plaintiff. The plaintiff makes no specification of the particulars in which the evidence is insufficient to support the findings. In the assignments of error in this court there is also an absence of any specification of the particulars in which the evidence is insufficient to support the findings; the assignments of error being practically the same as the specification of errors annexed to the bill of exceptions; the only reference to the evidence being that the same is insufficient to support the findings and judgment. This court, therefore, cannot properly review the evidence, for the reason that there is no specification of the particulars in which the evidence is insufficient to support the findings, as required by the statute. Section 5081, Comp. Laws, provides; "No particular form of exception is required, but when the exception is to the verdict or decision, upon the ground of insufficiency of the evidence to justify it, the objection must specify the particulars in which such evidence is alleged to be insufficient; but the specification of such particulars as provided in Section 5090, shall be sufficient." Subdivision 3, § 5090, reads as follows: "* * * When the notice of intention designates as the ground of the motion the insufficiency of the evidence to justify the verdict or other decision, the statement shall specify the particulars

in which such evidence is alleged to be insufficient. * * * If no such specifications be made, the statement shall be disregarded on the hearing of the motion." Again, by subdivision 4 of the same section it is provided: "When the motion is to be made upon the minutes of the court, and the ground of the motion is the insufficiency of the evidence to justify the verdict or other decision, the notice of intention must specify the particulars in which the evidence is alleged to be insufficient, * * * If the notice does not contain the specifications here indicated, when the motion is made on the minutes of the court, the motion must be denied." It will thus be seen that in the absence of such specification of the particulars in which the evidence is insufficient to justify the decision, it is made the duty of the trial court to disregard the statement on the hearing of the motion, and this court in such a case cannot review the evidence on the appeal. See Land-Mortgage Co. v. Case, 13 S. D. 28, 82 N. W. 90, and cases cited. The findings of the trial court are therefore conclusive upon this court.

The only questions that can be raised on this appeal are that the findings do not support the judgment, and errors of law occurring at the trial and duly excepted to. The plaintiff, in his brief, has not presented to this court any reasons why the findings do not support the judgment, and we are of the opinion that they do fully sustain the judgment. The errors of law specified in the assignment of errors in this court have not been discussed or referred to by appellant in his brief, and in such case this court has uniformly held that the appellant will be presumed to have abandoned all alleged errors not so discussed. There are, therefore, no questions before this court, other than those herein discussed, upon which it can properly pass. The judgment of the court below and the order denying a new trial are affirmed.