KRAKOWSKI, Respondent, v. WASKEY et al., Appellants.

(145 N. W. 566.)

1. **Statutes—Evidence—Enrolled Bill—Contradiction by House Journal.**

Laws 1913, Ch. 254, which was House Bill 280, relating to submission to electorate of question of sale of intoxicating liquors, provides that, if a majority "voting on such proposition" shall vote in favor of a sale, permission to sell shall be

granted.   **Held,** that the enrolled bill on file with Secretary of State is conclusive upon the courts as to contents of said House Bill, and hence the statute cannot be impeached by an entry in the House Journal showing defeat of an amendment to add the words "voting on such proposition;" more particularly in that the House Journal contains no copy of the printed bill, and the place for insertion of such phrase was not identified.   **Held,** further, that Laws 1909, Ch. 167, making the permanent legislative journals original evidence, constituting the permanent record of legislative proceedings, is not applicable to this inquiry.

2    **Intoxicating Liquors—Elections—Majority Vote, What Is.**

Under Laws 1913, Ch. 254, relating to elections on question of sale of intoxicating liquors, which provides that, if a majority of the voters "voting on such proposition" shall vote in favor of the sale, licenses shall be granted, **held,** that ballots illegally and improperly marked so that they could not be counted for any purpose, cannot be counted in determining the number voting on the proposition, and a majority of the legal ballots cast is sufficient to authorize the sale of intoxicants.

(Opinion filed February 18, 1914.)

Appeal from Circuit Court, Lake County.   Hon. JOSEPH W. JONES, Judge.

Election contest, by Paul Krakowski, contestant, against George H. Waskey, as Mayor, and Jake Kundert and another, as City Commissioners of the City of Madison, involving an election upon the proposition of granting permits for the sale of intoxicating liquors at retail.   From a judgment for plaintiff and contestant, defendants appeal.   Reversed and remanded, with directions.

*Joe Kirby,* for Appellants.

The enrolled bill cannot be contradicted or impeached by the entry in House Journal.   State ex rel Lavin v. Bacon, 14 S. D. 409; Narregang v. Brown County, 14 S. D. 357; Field v. Clark, 143 U. S. 649; Pangborn v. Young, 32 N. J. Law 29.

In this case there were 400 votes against the liquor question; 409 for it, and 17 defective or blanks.   Chapter 254, Laws of 1913.

Under Chap. 166, Laws 1903, as interpreted by this Court. a majority of the voters of the city were required.   Under the present law, a majority of the voters voting on such proposition

is all that is necessary. Only those who cast a properly marked ballot are deemed to have voted on any question.  15 Cyc. 388-90; State ex rel. Hocknell v. Roper, 66 N. W. 539-41; Hopkins v. Duluth, 83 N. W. 536; People ex rel. Beasley v. Town of Sausalito, 39 Pac. 937; Walker v. Oswell, 11 Atl. 711.

*H. H. Holdredge,* and *Chas. J. Porter,* for Respondents.

Prior to the present year, the law in regard to this question was Sec. 2856 of Political Code, as amended by Chapter 166 of the Session of Laws of 1903; such Statute required such question to be carried by a "majority of the voters of such Township, Town or City" and, as the law did not provide how the number of voters should be ascertained, the court held that the highest number of votes cast on any office or proposition, at such election, should be the number.

State ex rel Clark v. Stakke, 117 N. W. R. 130, and not simply the number cast on the license question.

Blank ballots and ballots so defectively marked that they can not be counted either way, should be counted in determining the total vote.  Treat v. Morris, 127 N. W. R. 554.

The same rule applies to this case, and the 409 votes cast for license do not constitute a majority of the 826 voters.  Briggs v. Gheist, 134 N. W. R. 322.

The law of 1913 does not make any change in this respect.

Even if the law was changed to read as reported in the 1913 Session Laws, such change was made to meet cases where City officers or other propositions were voted on at the same election, and more votes cast on them than on the license uqestion.

It clearly appears from the permanent House Journals, that the Bill as passed by the Legislature did not contain the clause, "voting upon such proposition;" that in fact the Legislature refused to insert this.  This being so, and the clause being found in the enrolled bill signed by the Governor, the question arises as to which controls.

The law of this State, as laid down in Narregang v. Brown Co., 14 S. D. 361, continued as such until the Legislature adopted Chapt. 167, Session Laws of 1909 which changed this con-

dition, and in effect provided that the record of the proceedings of the Legislature, compiled and published as therein provided, should be and constitute the original evidence of such Legislative proceedings.

The act of 1913, as passed by the Legislature, made no change in the existing law in the respect under consideration. State ex rel Clark v. Stakke, 117 N. W. R. 129; Treat v. Morris, 127 N. R. P. 554; Briggs v. Ghrist, 134 N. W. R. 323.

GATES, J.    This is an election contest. The question is whether at the annual election held at Madison, S. D., on April 16, 1913, the proposition of granting permits for the sale of intoxicating liquors at retail was carried or was defeated. At said election there were deposited in the ballot box 826 ballots upon this question.    Of these 826, there were 409 in favor of granting such permit, and 400 against.    Sixteen of the ballots were so illegally and improperly marked that they could not be counted, and one was a blank.    The ultimate question is this: Are those 17 ballots to be considered in determining the number of voters "voting on such proposition?"

[1]    Before discussing that question, our attention is called in the respondent's brief to a claim that the words "voting on such proposition" were not contained in the act as it passed the Legislature, viz.:    Chapter 254, Laws 1913, being House Bill 280.    Said act is in part as follows: "That section 2856 of the Revised Political Code of 1903, as amended by chapter 166 of the Session Laws 1903 be amended to read as follows:  *  *  * The question shall be submitted upon a separate ballot conforming to the general election laws of the state upon which ballot there shall be printed the words: 'Shall intoxicating liquors be sold at retail?'    Before which words shall be printed the words 'yes' and 'no,' and at the left of each of such words 'yes' and 'no' shall be placed a square or circle and any voter in favor of the sale of such liquors as aforesaid shall mark in the square or circle at the left of the word 'yes' with a cross (x), any voter opposed to such sale shall mark in the square or circle at the left of the word 'no' with a cross (x) and if a majority of the voters of such township, town or city *voting on such proposition* shall vote in favor of such sale of intoxicating liquors at retail, the corporate authorities thereof shall grant

permission for such sale for the ensuing year in accordance with the provisions of this act." It is claimed that the italicized words "voting on such proposition" were surreptitiously inserted in the enrolled bill after it had gone through the legislative hopper. The law theretofore existing upon this subject omitted the words "voting on such proposition," and read as follows: "And if a majority of the voters of such township, town or city shall vote in favor of such sale of intoxicating liquors at retail, the corporate authorities thereof shall grant permission for such sale for the ensuing year."

Our attention is called to page 1023 of the permanent House Journal of 1913, where we find: "Mr. Ruckman moved that House Bill No. 280 be referred to a committee of one, with instructions to amend as follows: After the word 'city' in line 36 of section 1 of the printed bill, insert the words 'voting on such proposition.' Mr. Patrick moved the previous question, which motion prevailed. The question being on the motion to amend as made by Mr. Ruckman, and being put, the motion was lost." It appears from the Senate Journal that the bill passed the Senate without change. It is therefore claimed that this record shows that the words "voting on such proposition" were not in the bill as passed. Our attention is also called to chapter 167, Laws 1909, which provides for a permanent journal of the two legislative bodies, and contains the following: "And when so compiled, issued, bound and published in book form as journal of the Senate and journal of the House, with indexes to the same, and with front page as above set forth such published books shall be and constitute the original evidence to be used in all courts, and shall constitute the original and permanent record of such legislative proceedings, and it shall not hereafter be necessary to copy or record such proceedings in any other book or record whatever." It is therefore claimed that under the prior liquor election law as construed by this court, and under the present law, if the words "voting on such proposition" be omitted, the said 17 votes should be counted, and that, as 409 is not a majority of 826, the proposition did not prevail at the election.

An examination of the House Journal reveals the fact that nowhere therein is there any copy of the bill as proposed or as

passed. How can we determine that the motion made by Mr. Ruckman was intended to supply the above italicized words in the act as published in the 1913 Session Laws.. Let it be noticed his proposed amendment was that the words "voting on such proposition" be inserted after the word "city" in line 36 of section 1 of the printed bill. Now the word "city" occurs ten times in the bill as it appears in the Session Laws. How can we say which particular word "city" occurred in line 36 of the printed bill? We have no right under the law to refer to a printed copy of the bill, especially as none was offered in evidence, and it would have been inadmissible if offered.

The bill as it was filed in the office of the Secretary of State, and as it now appears in the Session Laws, contains the certificate by the secretary of the Senate and by the chief clerk of the House that it was the bill that was passed. That was the bill that was approved by the Governor. An inspection of it shows that it was correctly printed in the Session Laws.

In the case of Narregang v. Brown County, 14 S. D. 357, 85 N. W. 602, this court said: "It is insisted on the part of the respondents that the act of the Legislature, as enrolled and certified to by the respective officers and approved by the Governor, is conclusive upon the courts, and that it is not competent for the courts to consider any matter found in the journals tending to impeach the validity of the act. * * * We shall not now stop to inquire whether the journals of the two houses, if given full credence, afford sufficient evidence that the provisions of the Constitution were not complied with, but confine ourselves to the question of whether or not the entries found in the journals can in any case be received by the court to impeach the enrolled bills as certified to by the presiding officers of the two houses and approved by the Governor. * * * We are of the opinion that public policy, the better reasoning of the decisions, and the great weight of authority support the respondent's contention. The authorities sustaining the appellant's view take the position that, as the proceedings provided by the Constitution for the passage of bills are mandatory, it is the duty of the court, when any bill is claimed to have been passed in violation of any of the mandatory provisions of the Constitution, to examine the journals of the two houses, and, if it finds evidence therein that

such is the fact, to declare such act null and void. In this view, it will be seen the court virtually ignores the authentication of the bill by the presiding officers, and substitutes in its place the memoranda of the clerks found in the journals, transcribed perhaps months or years after the Legislature which passed the act has adjourned. Courts that take this view seem to overlook the fact that the presiding officers of the two houses act under the solemnity of their oaths in certifying to the bills passed, and that the members of the two houses and the members of the various committees, also, are acting under the solemnity of an oath to support the Constitution of the state, and that the provisions of the Constitution providing the various steps that shall be taken in the passage of a bill are addressed mainly to the Legislature. Such a rule requires that all persons shall be presumed to know the law, not only as it is preserved in the public records of the state, but as it may be changed, modified, or annuled by the clerk's memoranda in the journals of the two houses, and neither lawyer nor laymen can be said to know what law is in force, unless he is familiar with the journals of the two houses and the legal effect of the journal entries. * * * Our conclusion is, therefore, that the circuit court was concluded by the properly authenticated enrolled bill on file in the office of the Secretary of State, of which the printed laws are prima facie evidence."

Among the mulltitude of citations referred to in that case, we cite the following from Sherman v. Story, 30 Cal. 253, 89 Am. Dec. 93: "Better, far better, that a provision should occasionally find its way into the statute through mistake, or even fraud, than that every act, state and national, should at any and all times be liable to be put in issue and impeached by the journals, loose papers of the Legislature, and parol evidence. Such a state of uncertainty in the statute laws of the land would lead to mischiefs absolutely intolerable."

For the purposes of the present case we therefore are compelled to hold that chapter 167 of the Laws of 1909 cannot apply to the present inquiry notwithstanding its provisions. We are compelled to hold that the enrolled bill on file in the office of the Secretary of State is conclusive upon us as to the contents of the legislative enactment known as House Bill No. 280, and which appears in the Laws of 1913 as chapter 254.

[2] It was further claimed by respondent that, even if the words "voting on such proposition" were lawfully contained in the act of 1913, the Legislature did not intend thereby to make any change in the required number of votes to carry the license, but to limit the number to those casting ballots upon this proposition, and did not intend to require a higher number if cast upon some other proposition. And the view of the learned trial court upon this subject is quoted in the brief as follows: "The whole statute and legislative policy on the subject indicate that the clause should be understood in its ordinary rather than technical sense, as including the voters who cast ballots on such proposition, including such as failed to express their choice in the manner prescribed by law. As I construe it, the amendment makes no change upon the point in question, except in cases where city officers are elected or some other proposition is voted on at the same election, and more voters cast ballots on some other proposition than on the license question."

In the case of State ex rel. Clark v. Stakke, 22 S. D. 228, 117 N. W. 129, construing section 2856, Pol. Code, as amended by Laws 1903, the court held that the words "majority of the voters of such city" required a majority of the qualified voters of the city as shown by the aggregate number of votes cast at the election for the different candidates for office. Construing the same section of the statute, this court in the case of Treat v. Morris, 25 S. D. 615, 127 N. W. 554, held that: "Ballots not counted by reason of defective marking will not reduce the majority required to authorize the sale. Where it is shown that some one voted who was not a legal voter, that would reduce the majority to be overcome; but, where a qualified elector has lost his vote by reason of the improper marking of his ballot, no such result would follow, but the majority required would remain the same." Construing the same statute, this court, in Briggs v. Ghrist, 28 S. D. 562, 134 N. W. 321, held that, for the purpose of determining the number of legal voters, votes cast by illegal voters should be excluded from the total, but that illegally marked ballots should be counted.

With these three decisions this court as at present constituted does not take issue. Were the questions therein decided still open and undecided, we should arrive at the same result.

But the question now presented is entirely different. The

question now before us is not: How many qualified voters there were in Madison on the date of such election? The question is: How many of such voters voted upon the proposition of the sale of intoxicating liquors? If it be claimed that the 17 void ballots should be counted in determining the number of voters "voting on such proposition," the query naturally arises, how did those 17 persons vote? They certainly did not vote in favor of granting liquor permits. Just as certainly they did not vote against granting such permits. How can it be said, therefore, that those 17 persons voted on the proposition? In respondents' brief we are cited to the one case of Smith v. Board of County Commissioners, 64 Minn. 16, 65 N. W. 956. It was there held that defective ballots should be counted in determining the number of votes cast upon the proposition. However, in the case of Hopkins v. City of Duluth, 81 Minn. 189, 83 N. W. 536, that court, in commenting upon the decision in Smith v. Board of County Commissioners, *supra*, said: "The contest in that case was upon the change of a county seat, which must in all cases be at a special election, and the removal must be carried under the express terms of the statute, by 55 per cent. of the votes cast.' In that case it was held, for reasons that were peculiar to the character of such a contest, that the necessary safeguards which the statute relating thereto, in its various provisions, requires, 'to prevent a county seat from becoming a mere football, to be frequently kicked about from one point to another' by caprice, and to give to the existing county seat 'some degree of permanence,' demanded a strict construction of the language of the statute designating the majority by which the removal should be carried, * * * and the practical result is reached that it was within the legislative intent, in view of all of the provisions of the removal law, that the words 'votes cast' were used as the equivalent of 'ballots cast,' and the reasoning of the court fully justified that conclusion." But in the later case the court held that defective ballots should not be counted in determining whether a city charter had been ratified where the law required "four-sevenths of the qualified voters voting at such election" to assent thereto, and, in declining to follow the decision in the county seat case, the court said: "It does not seem reasonable to apply a similar test to the words of

the amendment, 'qualified voters voting at such election,' to do so would be to hold that any person who had passed into the voting booth, and whose name had been checked upon the poll list, had voted, though he had expressed no choice for any one, or upon any question or proposition, and would give to a bare attempt on his part to vote, or a fraudulent vote, a substantial effect—as much as if the voter had voted, when he had not voted at all."

In State ex rel. Hocknell v. Roper, 47 Neb. 417, 66 N. W. 539, upon rehearing, the decision in that case as reported in 46 Neb. 724, 61 N. W. 753, was reversed, and it was held that defective ballots should not be counted in determining whether three-fifths of all the votes cast were in favor of a certain county seat.

In the case of Murdoch v. Strange, 99 Md. 89, 57 Atl. 628, 3 Ann. Cas. 66, the court, in considering the effect of a "blank ballot," said: "To denominate such a paper a ballot would seem to miscall it. It is in fact nothing; it cannot be expressive of any intention; no rule or method of interpretation can relieve it of its dumbness. It no more indicates a preference for one of the candidates than for another."

In People v. Town of Sausalito, 106 Cal. 500, 39 Pac. 937, the question at issue was whether a town had become legally incorporated. The court said: "According to this statement, there was certainly a majority for incorporation. It is clear that the seven ballots without any marks to indicate the elector's wish 'in any particular' were not votes in any sense. They were mere blanks, and were not to be counted or considered for any purpose."

In Hicks v. Krigbaum, 13 Ariz. 237, 108 Pac. 482, the court did not find it necessary to determine whether illegal votes and votes which were unintelligible or marked in such manner as to subject them to rejection should be included in the aggregate, and considered as "votes cast," but did determine that blank ballots should not be considered as "votes cast."

In City of Inglewood v. Kew, 132 Pac. 780, the District Court of Appeals of the Second District of California interpreted the phrases "voting for a proposition," and "voting against a proposition." The decision in that case is so applicable to the

present one that we quote the following from that opinion: "As to ballots 'A' and 'B,' the voter expressed no wish. It is not possible to say whether his vote was in the affirmative or negative. As said in People v. Sausalito, 106 Cal. 503, 39 Pac. 937, they were mere blanks, not to be counted for any purpose. There remains, then, a consideration of those ballots marked with a pencil, each clearly expressing the wishes of the voter if the same were properly expressed; but under the mandatory clause of the election law and the ordinance they could not be counted, because the voter violated the instruction under which, and under which only, he could express his preference. We do not of necessity say that these pencil marks were distinguishing marks; but, not legally expressing any wish, they must stand as mere blanks, not to be counted for any purpose. It is contended by appellant that, even though these ballots were ineffectual to express the voter's wish, stilll, having complied with all the requirements of the statute in relation to the exercise of the elective franchise other than the disregard of the mandate of the law as to the manner of marking ballots, they must be considered as voting and increasing the number of votes cast at the election in excess of the number found by the trial judges. With this contention we cannot agree. The final deposit of a legal ballot in the box is the act of voting. It matters not that one sign the roster, take his ballot, repair to the booth, and formally present to the election officers what purports to be his ballot; nevertheless, if such ballot is not expressive of any wish or preference of the voter which under the law may be considered and given effect, such person has not voted, and his vote should not be counted, even in the determination of the number of persons who voted at the election. We believe, therefore, that the evidence before the court, confined as it was to the ballots purported to be cast, justified the court below in its determination that none of said ballots should be counted either for or against either proposition, or considered in determining the number of votes cast at the election."

Our election statute (section 1929, Pol. Code) provides as follows: "In the canvass of the vote any ballot which is not endorsed as provided in this article, by the official stamp, shall be void and shall not be counted; and any ballot or parts of a

ballot from which it is impossible to determine the elector's choice shall be void and shall not be counted."

This section has been interpreted in many cases beginning with the case of Vallier v. Brakke, 7 S. D. 344, 64 N. W. 180, and it has been uniformly held that void ballots should not be counted.

It is our conclusion, therefore, that, in determining the number of voters "voting on such proposition," only legal ballots should be counted, and that therefore the question, "Shall intoxicating liquors be sold at retail in the city of Madison," did receive a majority of the votes cast upon such proposition at the election held on April 15, 1913. If this were a question involving the right of two persons to office, or if it were a question as to whether bonds of a city had or had not carried, or even if it were a county seat contest, we are entirely clear that there would be no question as to what our decision should be in interpreting the phrase "voting on such proposition." Because it involves the question of the sale of intoxicating liquors is no reason why we should depart from the rules of construction applicable to other cases. The same rule should be followed in the one case as in the other.

The judgment of the trial court is reversed, and the cause remanded, with directions to · proceed in accordance with the views herein expressed.