MINNEHAHA COUNTY, Appellant

v.

STATE BOARD OF EQUALIZATION et al., Respondents

(176 N.W.2d 56)

(File No. 10769.   Opinion filed March 24, 1970)

George Weisensee, Minnehaha County State's Atty., Blaine Simons, Minnehaha County Special Asst. State's Atty., Sioux Falls, for appellant.

Gordon Mydland, Atty. Gen., John Dewell, Asst. Atty. Gen., Pierre, for respondents.

Claude A. Hamilton, Sioux Falls, for intervenor.

BIEGELMEIER, Judge.

Acting under Ch. 257 of the 1968 Session Laws[1] (now SDCL 10-11-47) the State Board of Equalization (herein designated Board) at its annual session in August 1969 found certain property in Minnehaha County assessed from 10% to 34.8% of its value

---

1. Citations are to the official Codes and Session Laws then in effect with South Dakota Compiled Laws 1967 thereafter. The latter became official by Senate Bill 13, approved January 20, 1970.

based on records before it and increased six classes of property in that county in amounts varying from 6% to 20%. On August 22nd the Board transmitted a certificate of its action to the county auditor of that county as provided by SDC 57.0420, amended by Ch. 461, S.L. 1957 (now SDCL 10-11-51) and on September 10th the county served a notice of appeal to the circuit court on the commissioner of revenue who is the secretary of the Board. SDC 1960 Supp. 57.01A02 and 57.0103, amended by Ch. 457, S.L.1957 (now SDCL 10-1-2 and 10-2-4).

The parties have raised no question as to the right of the county to appeal from the Board's decision and we consider it, as the circuit court did, on the merits.

■ Plaintiff county asserts Ch. 257, S.L.1968, now SDCL 10-11-47, was not adopted in accordance with the South Dakota Constitution. No courts dispute the proposition that all legislation to be valid must be enacted in conformity with the constitution. The problem arises as to the character of evidence which may be accepted to determine that question. In considering this the court in Barnsdall Refining Corporation v. Welsh, 1936, 64 S.D. 647, 269 N.W. 853, stated the sources of official information were the enrolled bills and legislative journals. Three views[2] of courts were mentioned: (1) the "enrolled bill" rule which holds the enrolled bill is conclusive evidence of its due enactment; (2) the "journal entry" rule that the presumption an enrolled bill was legally enacted is not conclusive and the court may look behind the act and determine whether the legislature observed constitutional requirements in its passage and for that purpose recitals in the journal may be considered; and (3) the "modified journal entry" rule which regards the enrolled bill as conclusive of its due enactment, except when the constitution expressly prescribes a specific journal entry and an act is attacked for failure to observe this requirement. The Barnsdall opinion noted that while Narregang v. Brown County,[3] 1901, 14 S.D. 357, 85

---

2.  The author of "Constitutional Regulation of Legislative Procedure" in 21 Iowa Law Rev. 538, lists five alternative kinds of evidence. This note and those on pages 79 and 573 are cited in the Barnsdall opinion.
3.  State ex rel. Lavin v. Bacon, 14 S.D. 394, 85 N.W. 605, and Krakowski v. Waskey, 33 S.D. 335, 145 N.W. 566, followed in accord.

N.W. 602, held the enrolled bill on file with the Secretary of State could not be impeached by entries in the journals, that opinion had not made a distinction between matters not required to be entered in the journals and those so required to be entered by the constitution. After quoting several constitutional provisions and excerpts from other opinions the court in effect adopted the "modified journal entry" rule by permitting an enrolled bill to be impeached by the legislative journals on the ground it had not received the necessary majority on final passage when the constitution requires the yeas and nays to be entered on the journal.[4]

Using the "modified journal entry" rule, No. 3 above as the guide, we now turn to the challenges made to the act as it proceeded through the legislature. Senate Bill 109 was introduced in, and passed by, the Senate by the required majority of 25 yeas and 5 nays, excused 5, and the yeas and nays were entered on the journal.[5] S.J.233. On reaching the floor of the House the bill was amended by a 42 to 31 roll call vote. H.J. 712-713. Then, "The question being 'Shall Senate Bill No. 109 pass as amended?'", the House roll call vote shown by the journal was 40 yeas and 33 nays. H.J. 712-714. The Speaker declared the bill passed and on motion the title was amended. The message from the House to the Senate showed Senate Bill 109 amended with the title and body of the act in full as they appear in the enrolled act.

In the Senate a motion was made that "the Senate do now concur in House amendment to Senate Bill No. 109 as found on page 625 of the Senate Journal. The question being 'Shall the Senate concur in House amendments to Senate Bill No. 109?'", the Senate roll call vote shown by the journal was 27 yeas and 8 nays. Mr. President declared the motion prevailed and the House amendments to Senate Bill 109 concurred in.

---

4. Art. III, § 18, provides: "The enacting clause of a law shall be: 'Be it enacted by the Legislature of the State of South Dakota' and no law shall be passed unless by assent of a majority of all the members elected to each house of the Legislature. And the question upon the final passage shall be taken upon its last reading, and the yeas and nays shall be entered upon the journal." (emphasis supplied)

5. Details of the title and the body of Senate Bill 109 will be stated and contentions of appellant County will be discussed later in the opinion.

Limiting our inquiry strictly to the requirement of Art. III, § 18, that the "question upon the final passage shall be taken upon its last reading, and the yeas and nays shall be entered upon the journal", it appears Senate Bill 109 was so passed and the journal entries thereon made as to its final passage in the Senate at S.J. 233 and in the House at H.J. 714.

Argument is made that the journal records more in detail than that set out above show irregularities and errors in the passage of Senate Bill 109 which violate the constitution and render the act invalid. Objections made are that the title to Senate Bill 109 as originally introduced and passed by the Senate involved the assignment of a student (in argument and for brevity here identified as a "school boy" bill) while in the House it became a new and different bill, a "tax" bill, not germane to the original; that it never was passed by roll call vote of both Houses and the record indicates the "school boy" title continued on Senate Bill 109 in some steps up to the time of signing by the presiding officers.

From the printed Senate and House Journals, we append hereto a Summary of the bill's history, in order that it may be clear what part thereof the court concludes may be considered and what part may not be considered to impeach an enrolled act. In it are arbitrarily listed 17 steps in its progress with journal entry pages, dates and summary of the actions thereon.

Application of the "modified journal entry" rule eliminates all but steps 4, 8 (with 13), 15 and 17 as no constitutional provision "expressly prescribes a specific journal entry" for any of the eliminated steps. The first such requirement is a record on the "question upon the final passage shall be taken upon its last reading, and the yeas and nays shall be entered upon the journal." Art. III, § 18. That was clearly the action in the House (step 8) as, after a roll call vote on the amendment to the bill, the question was on final passage of Senate Bill 109, as amended, with approval by a roll call vote entered in the House Journal. Thereafter the title was amended and agreed to.

█ It is unnecessary on this appeal to determine which of the two Senate votes was final passage. In step 4 it appears "Senate Bill 109" with the "school boy" title was originally passed by a roll call vote entered in the Senate Journal. While that journal includes the title as stated, there is no specific requirement in the constitution that the title must be recorded in the journal and it thus may not be considered by the court to impeach the due passage of the enrolled bill in the form the signature of its presiding officer attests. Neither is there any record before us of the body of Senate Bill 109 when it originally passed the Senate so the body of the bill may have been germane to the House amendments, the title incorrect and House amendments not only constitutionally, but under their rules of procedure, in order and properly approved. Where a conflict or difference appears in the journal record between the bill number and its title, we accept that record which is consistent with the enrolled act and the text and title of the enrolled act as attested to by the presiding officers.

█ Even if the first vote of the Senate (step 4) be deemed irregular or not a vote on final passage, the later action taken by the Senate (step 13) approving Senate Bill 109 as amended by the House by roll call vote entered in the journal[6] where the full content of the bill and title were reported, obviates all doubt the Senate was fully advised of its contents and amendments made. Final passage of a bill occurs in either House when it receives the required vote taken by the ayes and nays on roll call following last reading of a bill, for there is nothing further for that House to do relative to it other than transmit it to the other House for its consideration and if that House approves it as passed in the other by the required vote and record, that is, not merely final passage in that branch but "final passage" of the bill because it has passed both Houses in the same form and there is nothing further for either of them to do to complete it. But in case the House to which it is transmitted amends it and

---

6. The Judges of this court declined to answer a question propounded by Governor Sheldon in 1893 involving a ruling by the President of the Senate as to whether Art. III, § 18, applied to a vote on a house amendment to a senate bill. In re Construction of Constitution, 3 S.D. 548, 54 N.W. 650.

returns it to the House in which it originated, it is clear that concurrence by this House completes the passage of the bill and this act is "final passage" within the meaning of Art. III, § 18. The action of the Senate by recorded roll call vote on Senate Bill 109 as amended fulfilled that requirement and was a constitutional "final passage." Cox v. Stults Eagle Drug Co., 1933, 42 Ariz. 1, 21 P.2d 914. Cf. Scott v. State Board of Assessment & Review, 1936, 221 Iowa 1060, 267 N.W. 111,[7] approving as final passage the vote to adopt a conference committee report while Smith v. Thompson, infra, was still authority.

█ This leaves only steps 15 and 17 to be considered, that is, was there compliance by the presiding officers of each House with Art. III, § 19, of the S. D. Constitution?[8] It is undisputed that the enrolled act on file in the office of the Secretary of State contains the signatures of the President of the Senate and the Speaker of the House. The fact of the signing of Senate Bill 109 by each officer in the presence of their respective Houses does appear in each journal. From what has been written about a difference between a bill number and its title, we accept the version which is consistent with the enrolled bill or act and so we conclude there was compliance with Art. III, § 19. While it was dictum written after Narregang and before Barnsdall were decided, the opinion in State ex rel. Lavin v. Bacon, 1901, 14 S.D. 394, 409, 85 N.W. 605, gave some weight to the presumption which attaches to the enrolled bill that all the forms required by law had been complied with even in states where the question is open to investigation.

The course of Senate Bill 109 deserves at least mention of the comment of the court in Lovett v. Ferguson, 10 S.D. 44, 54, 71 N.W. 765, 768, in referring to the record there under review as being "unartistic and lacking in that precision that should char-

---

7. This is one of several cases challenging legislative acts in Iowa after the Smith v. Thompson opinion; they are listed in Carlton v. Grimes, 237 Iowa 912, on page 903, 23 N.W.2d 883.

8. "The presiding officer of each house shall, in the presence of the house over which he presides, sign all bills and joint resolutions passed by the Legislature, after their titles have been publicly read immediately before signing, and the fact of signing shall be entered upon the journal." (emphasis supplied)

acterize" proceedings in a legislature—either to amend the constitution as it was there or enact laws as here. The decision reached on this appeal is but an application of the principle of the Barnsdall opinion and neither extends nor recedes from it. As Smith v. Thompson, 219 Iowa 888, 258 N.W. 190, and other Iowa opinions were cited in the briefs, some comment on them is appropriate.

The Iowa Supreme Court first held the final, conclusive and only evidence of passage of a bill was the "enrolled bill" signed by both the President of the Senate and the Speaker of the House. State ex rel. Hammond v. Lynch, 1915, 169 Iowa 148, 151 N.W. 81, and Davidson Bldg. Co. v. Mulock, 1931, 212 Iowa 730, 235 N.W. 45 (this opinion cites South Dakota as in accord, which it then was); see Narregang v. Brown County, 1901, 14 S.D. 357, 85 N.W. 602. In 1934 the Iowa court in Smith v. Thompson, supra, generally overruled Lynch and Davidson and apparently adopted the "modified journal entry" rule which permits the court to look at the journal to see if a mandatory constitutional requirement had not been complied with and, if so, hold the act unconstitutionally adopted. The Smith v. Thompson opinion was the subject of three notes in 21 Iowa Law Rev. 79, 538 and 573, cited in the Barnsdall opinion in 1936. In 1946 the Iowa court unanimously expressly overruled Smith v. Thompson and all cases thereafter of similar nature and returned to the conclusive evidence or "enrolled bill" rule of Lynch and Davidson Bldg. Carlton v. Grimes, 237 Iowa 912, 23 N.W.2d 883. The opinion of Justice Bliss indicates the wisdom of the restraint a court should follow in reviews of the proceedings of the legislature in enacting laws. It must be kept in mind, as repeated in the Barnsdall opinion, that members and officers of the legislature act under the solemnity of their oaths, and the provisions of the constitution providing the various steps that shall be taken in the passage of a bill are addressed mainly to the legislature.

█ Finally it is contended the action of the State Board of Equalization was arbitrary and capricious. The trial court found and determined the Board lawfully pursued its authority under

the statute and its action was not capricious, arbitrary or discriminatory and we find no reason to overturn those conclusions.

Affirmed.

All the Judges concur.

## APPENDIX

## SUMMARY OF HISTORY OF SENATE BILL NO. 109

(Ch. 257, Laws of 1968)

1. (S.J. 171, 1/15)

"Committee on Education introduced

"SENATE BILL NO. 109: A BILL FOR AN ACT ENTITLED, An Act authorizing the principal or person directly in charge of a school to assign a student to an educational experience away from the school site (hereafter called "school boy" title or bill).

"Which was read the first time."

2. (S.J. 184, 1/16)

"Do Pass" Committee report.

3. (S.J. 208, 1/17)

Senate Bill No. 109 with "school boy" title as in 1 read second time.

4. (S.J. 232-233, 1/18)

"The question being 'Shall Senate Bill No. 109 pass?' " On recorded journal roll call there were 25 yeas; 5 nays. Bill declared passed and title agreed to.

5. (H.J. 276, 1/19)

Senate Bill No. 109 with "school boy" title as in 1 read first time.

6. (H.J. 670, 2/5)

"Do Pass" Committee report.

7. (H.J. 712-714, 2/6)

"SENATE BILL NO. 109: A BILL FOR AN ACT ENTITLED (with title as in 1).

"Was read the second time.

"Mr. Bibby moved that Senate Bill No. 109 be amended as follows:

"Strike everything after the enacting clause and in lieu thereof insert the following:

"That SDC 1960 Supp. 57.0419 be, and the same is hereby, amended by the addition thereto of a new subsection numbered (3), to read as follows: (Body of Ch. 257 inserted hereafter called 'tax' bill)."

On a motion to amend, a roll call was demanded and ordered and the amendment was agreed to—42 yeas, 31 nays, and the motion declared carried.

8. "The question being 'Shall Senate Bill No. 109 pass as amended?'" On recorded journal roll call there were 40 yeas; 33 nays.

9. (H.J. 714-715, 2/6)

"So the bill having received an affirmative vote of a majority of the members-elect, Mr. Speaker declared the bill passed."

10. "The question being on the title.

"Mr. Bibby moved that the title to Senate Bill No. 109 be amended as follows:

"On page 1, strike lines 6, 7 and 8 of the printed Bill and insert in lieu thereof the following:

'FOR AN ACT ENTITLED, An Act to amend section 57.0419 of the 1960 Supplement to the South Dakota Code of 1939, by the addition thereto of a new subsection to be numbered (3), relating to the powers of the State Board of Equalization (hereafter called "tax" title)'.

"Which motion prevailed and the title was so amended.

"Mr. Murray moved, that the vote by which Senate Bill No. 109 was passed be reconsidered, and the motion to reconsider be laid on the table. Which motion prevailed."

11. (H.J. 736, 2/7)

E & E Committee reported Senate Bill No. 109 (with no title stated) correctly engrossed.

12. (S.J. 625, 2/7)

House message shows Senate Bill No. 109 amended with new "tax" title and new "tax" body in full.

13. (S.J. 684, 2/8)

. Motion to concur in House amendments. On recorded journal roll call—yeas 27; nays 8.

"Mr. President declared the motion prevailed and the House amendments to Senate Bill No. 109 concurred in."

14. (H.J. 798, 2/8)

Point of Order as to Speaker signing it raised on Senate Bill No. 109 (no title stated), and on motion tabled.

15. (H.J. 870, 2/9)

Speaker publicly read old "school boy" title as in 1 of Senate Bill No. 109, and signed same in presence of House.

16. (S.J. 720, 2/9)

E & E Committee reported Senate Bill No. 109 (no title stated) correctly enrolled.

17. (S.J. 721, 2/9)

President of Senate publicly read the old "school boy" title as in 1 to Senate Bill No. 109 and signed the same in the presence of the Senate.