2000 SD 106

**In re REQUEST OF GOVERNOR William J. JANKLOW for an Advisory Opinion Concerning the Further Interpretation of South Dakota Constitution Article IV, Section 4.**

No. 21535.

Supreme Court of South Dakota.

Request Received May 30, 2000.

Original Proceeding

Decided Aug. 9, 2000.

Advisory Opinion

**TO HIS EXCELLENCY, WILLIAM J. JANKLOW, THE GOVERNOR OF THE STATE OF SOUTH DAKOTA.**

[¶ 1.] Pursuant to Article V, § 5 of the South Dakota Constitution, you have requested an opinion of the Supreme Court on important questions of law con-cerning provisions in Article IV, § 4 of the South Dakota Constitution as it relates to the delivery of gubernatorial vetoes. In *In Re Janklow*, 1999 SD 27, ¶ 1, 589 N.W.2d 624, 625, we found a request for an advisory opinion on the time limits in this same section constituted a "solemn occasion" warranting issuance of the opinion. We reach a like conclusion here.

[¶ 2.] Article IV, § 4 provides in perti-nent part:

Whenever the Legislature is in session, any bill presented to the Governor for signature shall become law when the Governor signs the bill or fails to veto the bill within five days of presentation. A vetoed bill shall be returned by the Governor to the Legislature together with his objections within five days of presentation if the Legislature is in ses-sion or upon the reconvening of the Leg-islature from a recess . . .

Whenever a bill has been presented to the Governor and the Legislature has adjourned or recessed within five days from presentation, the bill shall become law when the Governor signs the bill or fails to veto it within fifteen days after such adjournment or recess.

In *Janklow*, 1999 SD 27 at ¶ 7, 589 N.W.2d at 627, we held:

that the five-day time period provided in Article IV, § 4 of the South Dakota Constitution means five calendar days, and does not provide for the exclusion of Sundays or legal holidays from the com-putation of this time period. [The Court further joined] the jurisdictions holding with the general rule, that the day of presentment is to be excluded from com-putation while the last day is to be in-cluded.

[¶ 3.] In view of our holding in *Janklow*, you have now asked the following ques-tions regarding the further interpretation of Article IV, § 4:

1. Because the Constitution, Article IV, Section 4, uses specific words and phrases regarding when vetoes can be

delivered, what do the following words and phrases mean:

   a) "in session"
   b) "recess"
   c) "adjourned or recessed"
   d) "adjournment"

2. Because the Constitution, Article IV, § 4, requires delivery of a veto message and bill to the Legislature, when and how can the Governor deliver veto messages and bills to the Legislature during recesses and adjournments, at night, over weekends, during national holidays, and during the fifteen day break before the final legislative day?

3. Because the Constitution, Article IV, § 4, requires delivery of a veto message and bill to the Legislature, who should receive the veto message and bill from the Governor to satisfy this requirement during recesses and adjournments, at night, over weekends, during national holidays, and during the fifteen day break before the final legislative day?

## Standard of Review

[¶ 4.] " 'When words in a constitutional provision are clear and unambiguous, they are to be given their natural, usual meaning and are to be understood in the sense in which they are popularly employed.' " *Janklow,* 1999 SD 27 at ¶ 5, 589 N.W.2d at 626 (quoting *Poppen v. Walker,* 520 N.W.2d 238, 242 (S.D.1994)). However, a constitutional provision is ambiguous when its language is reasonably capable of being understood in more than one sense. *See Zoss v. Schaefers,* 1999 SD 105, ¶ 6, 598 N.W.2d 550, 552 (statute is ambiguous when it is reasonably capable of being understood in more than one sense); *State v. Hagerty,* 580 N.W.2d 139, 143 (N.D. 1998)(in interpreting constitutional sections, courts apply general principles of statutory construction); *Hagerty,* 580 N.W.2d at 145 (ambiguity exists when good arguments can be made for two contrary positions about the meaning of language in state constitution).

## Ambiguities in Article IV, § 4

[¶ 5.] The first two paragraphs of Article IV, § 4 do contain some facial ambiguities that lead to the questions that have been presented. The plain language of the first paragraph gives the Governor five days from the presentation of a bill to veto it; otherwise, it becomes law whether the Governor signs it or not. To veto the bill, the Governor must return it to the Legislature within five days of presentation "if the Legislature is in session or upon the reconvening of the Legislature from a recess." Under paragraph two, however, if the Legislature has "adjourned or recessed" within five days of a bill's presentation, the Governor has fifteen days after the "adjournment or recess" to veto the bill or it becomes law whether the Governor signs it or not. The use of the term "recess" in both paragraphs one and two leads to obvious confusion over the precise number of days the Governor has to veto a bill if the Legislature adjourns or recesses after presenting it to the Governor, *e.g.,* if the Legislature presents the Governor with a bill and then recesses for more than five days, but less than fifteen days, must the Governor return the bill immediately when the Legislature reconvenes or can the Governor wait until the fifteenth day after the recess?

## Clarification of Ambiguities in Article IV, § 4

[¶ 6.] Some of the confusion in Article IV, § 4 can be alleviated with a careful reading of its first two paragraphs and with resort to other provisions of the constitution impacting on the meaning of terms such as "in session" and "recess." *See South Dakota Auto. Club, Inc. v. Volk,* 305 N.W.2d 693, 696 (S.D.1981) (in construing a constitutional provision the court must give regard to the whole instrument, must seek to harmonize the various provisions, and must, if possible, give effect to all the provisions).

[¶ 7.] Pursuant to South Dakota Constitution Article III, § 7, the Legislature

must convene at "12 o'clock m." on "the second Tuesday of January." Under Article III, § 6, "regular session[s]" in odd-numbered years then continue for a period not to exceed forty legislative days which exclude Sundays, holidays and legislative recesses. "[R]egular session[s]" in even-numbered years may not exceed thirty-five legislative days which, again, exclude Sundays, holidays and legislative recesses. The constitution itself does not prescribe the duration or hours of a "legislative day." However, it is generally held that a "legislative day can be terminated only by an adjournment or some actual dispersing of the assembled membership amounting to the same thing." 81A CJS *States* § 50 (1977).[1] While authorities appear to refer to breaks between legislative days as both "adjournments" or "recesses" (*see id.*), the more appropriate term in this context is a "recess." As explained in 81A CJS *States* § 50 (1977):

> A recess is interlocutory and not final in character, and it marks an interval of suspension of business only during a sitting and is not the equivalent of an adjournment or dissolution of the sitting at which it is taken. A recess operates to continue the assembly in session pursuant to its original convocation but with the interposition of an interval in its program of parliamentary business during which the membership must remain within call of the presiding officers and are not permitted to disperse, so that they may remain available to be called to order for resumption of parliamentary business when the period agreed on for recess has expired.
>
> One single legislative session may be interrupted by recesses and may validly

continue thereafter as long as the recesses can reasonably be said to be taken for a proper legislative purpose. *Adjournment of both houses of the legislature with the express provision that the adjournment is only until a specified date does not operate to dissolve the session of the legislature, but it constitutes a recess.* (emphasis added).

### Meaning of Paragraph One of Article IV, § 4

▮▮▮▮ [¶ 8.] Applying the foregoing principles to Article IV, § 4 yields certain conclusions responsive your inquiry. It is apparent that the first paragraph of the provision is devoted to executive action on bills when the Legislature is "in session." Since the legislative "sessions" defined in the constitution are the alternating thirty-five and forty day sessions beginning in January of each year, the term "in session" refers to these annual sessions.[2] Further, because the term "recess" generally refers to interlocutory and not final adjournments during a legislative session, the term "recess" in paragraph one refers to the Legislature's daily or other periodic recesses during the course of a session.

▮▮▮ [¶ 9.] Under this reasoning and this Court's holding in *Janklow*, 1999 SD 27 at ¶ 7, 589 N.W.2d at 626–27, the Governor has five calendar days from the date of presentation of a bill to veto it and prevent it from becoming law. To veto the bill, the Governor must return it to the Legislature within the five calendar days "if the Legislature is in session." However, if the Legislature recesses during these five days and thereby prevents the Governor from

---

1. This rule is qualified by the general rule that the end of a legislative session cannot be extended by devices such as stopping the clock. *See* 72 Am.Jur.2d *States, Territories, and Dependencies* § 57 (1974):

   > Where the constitution provides that a legislative session is not to exceed a designated number of days, unless extended by the concurrence of two-thirds of the members of each house, it has been held that the

session terminates by operation of law at midnight on the last day, and that an act on which the vote was taken after midnight is void. The device of stopping the clock does not affect this result.

2. The operation of Article IV, § 4, if any, with regard to special legislative sessions is beyond the scope of the Governor's inquiry and is not analyzed here.

making a timely return of the vetoed bill, the Governor may still make a timely return "upon the reconvening of the Legislature" from that recess. Thus, one might envision a scenario where the Governor has until midnight on the fifth day after presentation to veto a bill, but the Legislature has recessed by the time of the Governor's exercise of his veto authority. Since the recess prevents the Governor from making a timely return of the vetoed bill, paragraph one permits the Governor to return the bill upon the reconvening of the Legislature from the recess, *i.e.,* on the next legislative day of the session.

### Meaning of Paragraph Two of Article IV, § 4

■ [¶ 10.] The interpretation of paragraph two of § 4 presents a more complex problem because of its duplicitous use of the term "recess." Nevertheless, it is notable that, in contrast with paragraph one, paragraph two makes no reference to executive action on bills while the Legislature is in session. Rather, the entire paragraph is addressed to executive action on a bill after the Legislature has "adjourned or recessed." The use of the terminology "recess" in conjunction with the term "adjourned" in this context suggests that the paragraph contemplates executive action after the *final* recess or adjournment of a legislative session. Such a conclusion is in accord with the drafting history of Article IV, § 4. *See Janklow,* 1999 SD 27 at ¶ 5, 589 N.W.2d at 626 (if a term in constitution is unclear, the Court may look to the intent of the drafting body). As originally proposed, Article IV, § 4 was based upon § 4.16 of Article IV of the Model State Constitution. *See* Official Documents of the Constitutional Revision Commission, *Commission Document No. 6, Executive Department—Article IV,* pp. 47–48 (August 31, 1970). In a memo to the Constitutional Revision Commission concerning the proposal it was specifically pointed out that § 4.16 of the model document would provide for a shorter period for the Governor to act on bills "during session" and for

a longer period "after session." *See id.* While § 4.16 went through substantial evolution before becoming Article IV, § 4, each draft of the provision retained this concept and a further review of the Revision Commission Minutes and Documents fails to reveal any criticism of it or intent to change it.

[¶ 11.] It follows from the above that the terms "adjourned or recessed" and "adjournment or recess" in paragraph two of Article IV, § 4 refer to the Legislature's adjournment or recess at the close of a legislative session or what is typically referred to as its adjournment sine die. *See* Black's Law Dictionary 1242 (5th ed 1979)("sine die" defined as "[a] final adjournment"). Under this interpretation, when the Legislature presents the Governor with a bill and then adjourns sine die within five days of its presentation, the Governor has fifteen days after the adjournment to veto it and thereby prevent it from becoming law.

### Conclusions

[¶ 12.] Based upon the foregoing, we answer the questions you have presented as follows. First, with regard to your first question, the term "in session" in paragraph one of Article IV, § 4 of the South Dakota Constitution means the regular course of a thirty-five or forty day legislative session. The term "recess" in the same paragraph means the Legislature's daily or other periodic recesses during the course of a session. The terms "adjourned or recessed" and "adjournment" in paragraph two of Article IV, § 4 mean the Legislature's final adjournment at the close of a legislative session.

■ [¶ 13.] Second, with regard to your question two and the means the Governor must use to deliver veto messages and bills during recesses, adjournments, at night, over weekends, during national holidays and during the fifteen day break before the final legislative day, there is no necessity for such delivery. As mentioned above, if a recess during session operates

to prevent the Governor from making a timely return of a vetoed bill, paragraph one of Article IV, § 4 permits the Governor to make a timely return of the bill "upon the reconvening of the Legislature from [the] recess." As for delivery at night, over weekends, during national holidays or during the fifteen day break, the Legislature must stand in recess during these intervals in order to bring the preceding legislative day to an end. Accordingly, paragraph one would again allow a return to be made upon the reconvening of the Legislature from such a recess.

[¶ 14.] Third, with regard to your question three concerning who should receive a veto message from the Governor in order to satisfy the requirement in Article IV, § 4 that vetoed bills be returned to "the Legislature," the Legislature has itself assigned this responsibility to "the secretary of the senate or chief clerk of the house, whichever was the house of origin[.]" *See* SDCL 2–7–20.2. The only exception is for bills presented to the Governor at such time as to deny the Governor his full five days to consider them and return any vetoed bills to the Legislature before its final adjournment. In this instance, the Legislature has delegated responsibility for receiving any veto messages during the fifteen days after adjournment to the Secretary of State. *See* SDCL 2–7–20.3. We do not here pass upon the propriety of the Legislature's delegation of this legislative function to a constitutional officer unaffiliated with the Legislature.

[¶ 15.] Respectfully submitted this 9th day of August, 2000

Robert A. Miller
Chief Justice Robert A. Miller
Robert A. Amundson
Justice Robert A. Amundson
John K. Konenkamp
Justice John K. Konenkamp
David Gilbertson
Justice David Gilbertson

SABERS, Justice dissenting.

[¶ 16.] The majority has not answered that portion of question TWO relating to

the "How" or "Means" the Governor must use for delivery. In fact, ¶ 13 of the opinion provides "there is no necessity for such delivery." In this respect, I would simply advise that the "means" includes all appropriate delivery, including electronic, facsimile transmission and the more customary or traditional means of delivery.

[¶ 17.] It is obvious that the Legislature can not shorten the Governor's time frame for delivery or service by their actions or inactions. Accordingly, all other questions need not be addressed or answered at this time. In fact, it could be hazardous to do so in view of the fact that it is impossible to envision all possible scenarios that could arise with regard to the return of vetoed bills.

Richard W. Sabers
Justice Richard W. Sabers