2003 SD 30

**In re Request of Governor M. Michael ROUNDS for an Advisory Opinion in the Matter of Interpretation of SDCL 1–5–1 and 1–5–2 and South Dakota Constitution Article IV, Section 4.**

**No. 22766.**

Supreme Court of South Dakota.

Request Received March 11, 2003.

Decided March 18, 2003.

ADVISORY OPINION

TO HIS EXCELLENCY, M. MICHAEL ROUNDS, THE GOVERNOR OF THE STATE OF SOUTH DAKOTA.

[¶ 1.] Pursuant to Article V, § 5 of the South Dakota Constitution, you have requested an opinion of the Supreme Court on important questions of law concerning provisions in Article IV, § 4 of the South Dakota Constitution as it relates to executive action on certain bills that you believe may be unconstitutional for having been passed by the Legislature in an untimely manner.

[¶ 2.] "In the past, we have answered questions regarding the constitutionality of legislation before the Governor for his approval or disapproval, and did not reject such a request on the basis that the matter was not final. *Opinion of the Judges*, 81 S.D. 629, 140 N.W.2d 34 (1966)." *In re Janklow*, 530 N.W.2d 367, 369 (S.D.1995)(*Janklow I*). A like conclusion is appropriate here where the matter has a degree of urgency because the Legislature has not yet concluded its 2003 session. *See In re Janklow*, 1999 SD 27, 589 N.W.2d 624 (*Janklow II*) (request for advisory opinion on time limits for executive action under Article IV, § 4 of the South Dakota Constitution constituted a solemn occasion warranting issuance of advisory opinion with a degree of urgency as the state legislature was in session). *See also In re Request of Governor Janklow*, 2000 SD 106, 615 N.W.2d 618 (*Janklow III*) (advisory opinion issued on time and procedures for delivery of veto messages under Article IV, § 4 of the South Dakota Constitution).

[¶ 3.] The facts on which you base your request are as follows. Article III, Section

6 of the South Dakota Constitution limits the Legislature to a session of not more than forty days in odd-numbered years.[1] SDCL 2–14–2(7) defines a "day" as the period from midnight to midnight. SDCL 1–5–1 designates Sundays as legal holidays and SDCL 1–5–2 precludes public acts from being performed on Sundays.[2] This year, the Legislature convened its thirty-ninth legislative day on Saturday, March 8. You indicate that the Legislature passed several bills, including the general appropriations bill, that were presented to you at approximately 12:30 a.m. on Sunday, March 9. Moreover, you state that the daily journals of the House and Senate and the audio archive of floor activity indicate that several of the bills, including the general appropriations bill, did not receive final passage by one or both houses of the Legislature until Sunday, March 9.

[¶ 4.] Based upon these facts, you submit the following questions for response:

1. May I properly act upon bills which received final passage by one or both houses of the South Dakota Legislature on Sunday, March 9th or would SDCL §§ 1–5–1 and 1–5–2 render those bills void or voidable as the result of a public act (final passage by the Legislature) performed on a Sunday?

2. If I return bills to the Legislature for errors in style and form, does a 40th Legislative day remain to approve or reject those recommendations pursuant to Article IV, § 4 of the South Dakota Constitution in light of the fact that Saturday, March 8th was the 39th Legislative Day and the Legislature also acted on Sunday, March 9th? If no 40th Legislative Day remains, will bills to which I make style and form changes take effect without further action by the Legislature?

[¶ 5.] Because the analysis relating to question two assists in resolving question one, we address question two first. This Court addressed the passage of legislative days in *Janklow III*, 2000 SD 106 at ¶ 7, 615 N.W.2d at 620–621:

Pursuant to South Dakota Constitution Article III, § 7, the Legislature must convene at "12 o'clock m." on "the second Tuesday of January."[3] Under Article III, § 6, "regular session[s]" in odd-numbered years then continue for a period not to exceed forty legislative days *which exclude Sundays,* holidays and legislative recesses. "[R]egular session[s]" in even-numbered years may not exceed thirty-five legislative days

---

1. The pertinent part of S.D. Const. art. III, § 6 provides:

   A regular session of the Legislature shall be held in each odd-numbered year and shall not exceed forty legislative days, excluding Sundays, holidays and legislative recess, except in cases of impeachment, and members of the Legislature shall receive no other pay or perquisites except salary and mileage.

2. SDCL 1–5–1 provides in part that, "The first day of every week, known as Sunday ... shall be observed in this state as a legal holiday." SDCL 1–5–2 provides:

   Any public or private business may be transacted or legal process or notices of any kind may be served or published on any of

said days or next succeeding days designated herein as holidays, excepting Sundays, provided, that for good cause, a judge in whose court an action has been or is about to be brought, may endorse upon any process or notice permission to serve the same on Sunday, and if so endorsed, service thereof on Sunday shall be valid.

3. The reference to "12 o'clock m." in Article III, § 7, is not an error. The letter "m." is an abbreviation for the word "meridian." Webster's Third New International Dictionary 1352 (1976). "Meridian" refers to the high point reached by the sun and is defined as "the hour of noon[.]" *Id.* at 1414.

*which, again, exclude Sundays,* holidays and legislative recesses. (emphasis and footnote added).

■■■ [¶ 6.] While this Court recognized in *Janklow III* that, "[t]he constitution itself does not prescribe the duration or hours of a 'legislative day,'" *id.*, the duration of a legislative day is necessarily limited by the constitutional language excluding the calendar day Sunday as a "legislative day." A contrary conclusion would permit a legislative day commenced before a Sunday to continue on Sunday and even throughout Sunday and into ensuing calendar days of the week. This would eviscerate the constitutional language that specifically excludes Sundays as legislative days. Even giving utmost deference to the Legislature's procedures, this Court cannot read the constitution in that fashion. *See Independent Community Bankers Ass'n v. State,* 346 N.W.2d 737, 742 (S.D. 1984)(while legislature may suspend rules, nothing allows for suspension of our state constitution). *See also South Dakota Bd. of Regents v. Meierhenry,* 351 N.W.2d 450, 452 (S.D.1984) (constitutional provision must be read giving full effect to all of its parts); *Kneip v. Herseth,* 87 S.D. 642, 659, 214 N.W.2d 93, 102 (1974) (in construing constitutional provision, no wordage should be found surplus and no provision can be left without meaning). Although you present your question under the general statute prohibiting the transaction of public business on Sundays, SDCL 1–5–2, it is unnecessary to reach that question because the foregoing constitutional provision makes clear that the Legislature could not have used its fortieth day on Sunday, March 9.

[¶ 7.] With regard to your first question, efforts to continue the thirty-ninth day after midnight could conceivably call into question the validity of any legislation passed after the midnight hour. *See Janklow III,* 2000 SD 106 at n. 1, 615 N.W.2d at 621 for dicta questioning the validity of a legislative act voted on after midnight on the last day of a session. However, under the unique facts of this case and under the rules that prescribe our review of legislative acts, we do not believe the questioned acts violate our constitution.

■■■ [¶ 8.] We begin by acknowledging that the Legislature must comply with constitutional requisites in passing legislation.

> There is no question that to be valid all legislation must be enacted in conformity with the constitution. *Minnehaha County v. South Dakota St. Bd. of Equal.,* 84 S.D. 640, 176 N.W.2d 56 (1970). While the respective rules allowed for suspension of the legislative rules [in this instance, final passage after midnight on a legislative day preceding a Sunday], nothing allows for suspension of our state constitution.

*Independent Bankers,* 346 N.W.2d at 742. However, "[i]t must be kept in mind ... that members and officers of the legislature act under the solemnity of their oaths, and the provisions of the constitution providing the various steps that shall be taken in the passage of a bill are addressed mainly to the legislature." *Minnehaha County,* 84 S.D. at 647, 176 N.W.2d at 61. Thus, it is wise that courts exercise restraint in reviewing the proceedings of the Legislature in enacting laws. *Id.* For these reasons, courts are bound by strong presumptions favoring the constitutionality of legislative acts.

> Any legislative act is accorded a presumption in favor of constitutionality and that presumption is not overcome until the unconstitutionality of the act is clearly and unmistakenly shown and there is no reasonable doubt that it vio-

lates fundamental constitutional principles. *South Dakota Ass'n, Etc. v. State, Etc.*, 280 N.W.2d 662 (S.D.1979). Legislative action is also accorded a presumption in favor of validity and propriety and no statute should be held unconstitutional by any court unless its infringement of constitutional restrictions is so plain and palpable as to admit of no reasonable doubt. *Clem v. City of Yankton*, 83 S.D. 386, 160 N.W.2d 125 (1968).

*Independent Bankers*, 346 N.W.2d at 739.

■ [¶ 9.] In addition to this presumption, an issue arises with the character of evidence this Court may accept to determine the question of legislative conformity with the constitution. *Minnehaha County*, 84 S.D. at 642, 176 N.W.2d at 58. In *Independent Bankers, supra*, this Court held that the sources of official information used in determining the constitutionality of legislation are the enrolled bills and the legislative journals and adopted the "modified enrolled bill" rule concerning use of these sources. *Id.* As explained in *Independent Bankers:*

> the "modified enrolled bill" rule ... holds an enrolled bill as conclusive evidence of proper enactment except as to constitutionally mandated journal entries which are specifically questioned. *Minnehaha County*, 84 S.D. at 642, 176 N.W.2d at 58, citing [*Barnsdall Refining Corporation v. Welsh*, 64 S.D. 647, 269 N.W. 853 (1936)] In *Barnsdall*, this court effectively adopted the "modified enrolled bill" rule and the court followed that choice in *Minnehaha County, supra*. The *Barnsdall* court presented six constitutional provisions that require legislative journal entries:
>
> (1) The votes of the members elect taken on any question at the desire of one-sixth of those present shall be entered in the journal, S.D. Const. art. III, § 13.
>
> (2) The results of all voice votes must be entered in the journals, S.D. Const. art. III, § 14.
>
> (3) The vote on final passage taken upon last reading shall be entered in the journals, S.D. Const. art. III, § 18.
>
> (4) The fact that the presiding officer of each house signed the bill or resolution in the presence of the respective house after public reading of the title shall be entered in the journal, S.D. Const. art. III, § 19.
>
> (5) In the event of a gubernatorial veto and subsequent reconsideration of a bill, the results of the reconsideration vote and the names of the members voting for and against the bill shall be entered in the respective journals, S.D. Const. art. IV, § 9.
>
> (6) Any amendments to the state constitution passed by a majority of the members-elect of each house shall be entered in the journals with the vote that was taken, S.D. Const. art. XXIII, § 1.

*Independent Bankers*, 346 N.W.2d at 743 (citing *Barnsdall*, 64 S.D. at 654–56, 269 N.W. at 856–57). It should be noted that the last two constitutional provisions on journal entries that are listed above were deleted by constitutional amendments in 1972. *See* 1972 S.D.Sess.L. ch. 1, § 2; 1972 S.D.Sess.L. ch. 4, § 2. Thus, there are currently only four constitutional provisions that require legislative journal entries.

[¶ 10.] In *Independent Bankers, supra*, this Court considered whether the Legislature passed a bill during the 1983 session in violation of a constitutional provision requiring every bill to be read twice by number and title. Applying the modified enrolled bill rule, this Court concluded:

The modified enrolled bill rule precludes plaintiffs from introducing evidence of the legislature's alleged failure to comply with the requirements of Art. III, § 17, because a journal entry noting compliance with that section is not expressly required by the constitution. *In re Opinion of the Judges*, 84 S.D. 3, 166 N.W.2d 427 (1969).

Plaintiffs rely upon SDCL 2–7–12 which states that "[d]uly certified copies of such journals shall be received in all courts of the state as original evidence, and ... shall be prima facie evidence of [legislative] proceedings." The statute clearly requires all state courts to admit or receive the journals as evidence; however, nothing in the statute or its history requires this court to examine the journals in order to determine the constitutionality of enacted and enrolled laws. This court has not held that application of the "modified enrolled bill" rule depends upon whether the bill's content or the bill's enactment is questioned. Plaintiffs have not indicated that the legislative journals for ... the day [the bill] was considered and passed, lack any of the required entries enumerated above. Consequently, under *Barnsdall, supra,* and *Minnehaha County, supra,* and the "modified enrolled bill" rule adopted and followed by this court, *the enrolled bill ... is considered conclusive of its contents and due enactment.* *Independent Bankers,* 346 N.W.2d at 743 (emphasis added).

[¶ 11.] Employing the same analysis, the modified enrolled bill rule precludes evidence of the Legislature's failure to comply with alleged constitutional time limitations for passing bills because a journal entry noting compliance with a time requirement is not required by the constitution. *See Minnehaha County,* 84 S.D. at 645, 176 N.W.2d at 59 (absent constitutional requirement that title of bill be recorded in journal, title could not be considered by court to impeach due passage of the bill). Moreover, you have not indicated that the legislative journals for Saturday, March 8, 2003 lack any of the four required journal entries enumerated above. Consequently, under the modified enrolled bill rule, the enrolled bills are considered conclusive of their contents and due enactment, whatever unofficial sources of information may report on the process of enactment. *Independent Bankers, supra.*

[¶ 12.] We could end our inquiry here; however, even if we violated our precedent and examined the journals in order to determine the constitutionality of the enacted and enrolled bills you have questioned, we would reach no different result.[4] The House Journal for Saturday, March 8, shows that the House reconvened from its last recess that day at 11:15 p.m., that it proceeded with legislative business after that time and that the House finally completed its business at 12:26 a.m. on March 9.[5] Nothing in the House Journal shows the precise time of any of the legislative acts that took place between 11:15 p.m. and 12:26 a.m., including the time of final passage or of the reading and signing of any bills. Thus, even the journals do not definitively reveal when final passage occurred in that interval before midnight on March 8 irrespective of the time that the House finally completed its business.[6]

4. This is based upon a review of the temporary journals printed by the Legislative Research Council as of the date of this opinion.

5. Actually, the journal entry as to time of adjournment reflects that the House completed its business at 12:26 a.m. on, March 8,

2003 rather than March 9. It is assumed that this is typographical error.

6. The House Journal does show delivery or presentation of certain bills to you for your action at 12:23 a.m. on March 9, 2003. How-

This Court must engage in every presumption that timely passage occurred irrespective of what unofficial sources of information may report. *Independent Bankers, supra.*

[¶ 13.] The same could be written with regard to the Senate Journal for Saturday, March 8. It shows that the Senate reconvened from its last recess that day at 11:35 p.m., that it proceeded with legislative business after that time and that the Senate finally completed its business at 12:20 a.m. on March 9. Again, nothing in the Senate Journal shows the precise time of the various legislative acts that took place between 11:35 p.m. and 12:20 a.m., including the time of final passage or of the reading and signing of any bills. Thus, even if we declined to follow the rules we are obliged to use in examining legislative action, a review of the Senate and House Journals does not conclusively reflect final passage of the bills after midnight on March 8.[7] As previously observed, this Court must engage in every presumption that timely passage occurred. *Independent Bankers, supra.*

[¶ 14.] The enrolled bills presented to you yield no additional information on time of passage. They merely contain the signatures of the appropriate legislative officials and the time of delivery to your office. As noted, time of delivery is of no assistance in determining the time of passage.

[¶ 15.] Based upon the foregoing, the answer to your first question concerning whether you may properly act on the bills presented to you by the Legislature after midnight on March 8, 2003, is yes.

[¶ 16.] The answer to your second question concerning whether a fortieth legislative day remains for legislative action on form and style changes that you may recommend in some of the bills passed by the Legislature is also yes. These answers make it unnecessary to answer your third question concerning eventualities if no fortieth legislative day remains.

Chief Justice David Gilbertson
Justice Richard W. Sabers
Justice John K. Konenkamp
Justice Steven L. Zinter
Justice Judith K. Meierhenry

---

ever, delivery after midnight also does not mean that the steps leading to passage of the bills were not completed before midnight.

**7.** Like the House Journal, the Senate Journal also shows delivery or presentation of a bill to you for your action at 12:23 a.m. on March 8, 2003 (it is assumed March 8 is a typographical error and that the delivery was on March 9). Again, however, delivery after midnight does not mean that the steps leading to passage of the bill were not completed before midnight.